## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

_____

**In Re:**

**MICHAEL ERIC WOLFE and
MELISSA MARIE WOLFE,**

**Debtors.**

**Bankruptcy Case
No. 12-02533-JDP**

_____

## MEMORANDUM OF DECISION

_____

**Appearances:**

Joseph M. Meier, COSHO HUMPHREY, LLP, Boise, Idaho, Attorney
for Debtors.

Jeremy Gugino, Boise, Idaho, chapter 7 trustee.

### *Introduction*

Chapter 7[1] trustee Jeremy Gugino ("Trustee") filed a motion for

---

[1]  Unless otherwise indicated, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, all rule references are to the Federal
Rules of Bankruptcy Procedure, Rules 1001 – 9037, and all "Civil Rule"
references are to the Federal Rules of Civil Procedure.

MEMORANDUM OF DECISION – 1

turnover of the funds on deposit in Michael Eric Wolfe and Melissa Marie

Wolfes' ("Debtors") checking account on the day they filed their

bankruptcy petition. Dkt. No. 20. Debtors opposed the motion. Dkt. No.

26. A hearing on Trustee's motion was conducted on February 20, 2013,

following which the Court took the issues under advisement.

The Court has considered the parties' submissions and arguments

made, as well as the applicable law. This Memorandum states the Court's

findings and conclusions, and disposes of the motion. Fed. R. Bankr. P.

7052; 9014.

*Facts*

The facts are not in dispute.[2] As shown by their return, Debtors

owed income taxes to the Internal Revenue Service ("IRS") for the 2011 tax

year. Dkt. No. 28, Exh. 4. The IRS granted them an extension to pay the

amount owed, which expired on October 15, 2012. Dkt. No. 28, ¶ 2.

---

[2] At the hearing, the parties stipulated that the facts were as presented in
their briefs. Dkt. Nos. 26; 33. The parties further stipulated that the Affidavit of
Michael E. Wolfe, Dkt. No. 28, could be considered as testimony for purposes of
the motion.

MEMORANDUM OF DECISION – 2

Debtors borrowed $8,300 from Larry Fischer and deposited those funds

into their checking account on October 15, 2012.  *Id*. at ¶ 4.  That same day,

Debtors wrote and mailed a check to the IRS for $8,360, the amount of the

tax they owed.  *Id*. at ¶ 7.  While the IRS apparently deposited the check

into its bank account on October 19, 2012, the funds were not debited from

Debtors' checking account by their bank until October 23, 2012.  *Id*. at ¶ 9

and at Exh. 5.

Apparently unaware of the timing of this transaction, Debtors filed

their chapter 7 petition commencing this case on October 22, 2012.  Dkt.

No. 1.  They indicated in their schedules that their checking account had a

$.99 balance on petition day.[3]  However, the copy of the Debtors' bank

statement later obtained by Trustee showed the pre-bankruptcy deposit on

October 15 of $8,300, and the post-bankruptcy debit of the check to the IRS

for $8,360 on October 23.  Dkt. No. 28, Exh. 1.  Thus, according to the

statement, at the time Debtors filed their petition, the account still

---

[3]  Debtors' schedules also included Larry Fischer as a creditor with an
$8,300 claim.  Dkt. No. 1; Dkt. No. 28, Exh. 2.

MEMORANDUM OF DECISION – 3

contained a substantial balance.  On December 21, 2012, Trustee made

written demand for turnover of the $8,360.  Exh. 100.  After Debtors

disputed his right to the funds, Trustee filed the motion for turnover.  Dkt.

No. 20.

### *Analysis and Disposition*

The issue presented by Trustee's motion is a narrow one:  if a

chapter 7 debtor's check, given to a creditor before the filing of a

bankruptcy petition, clears the debtor's bank account after the petition is

filed, is the trustee entitled to recover the funds represented by the check

from the debtor?   The answer to this question turns on an interpretation of

§ 542(a) of the Bankruptcy Code.

It is well-understood that upon the filing of a bankruptcy petition,

an estate is created, comprised of "all legal or equitable interests of the

debtor in property as of the commencement of the case." § 541(a)(1).

Moreover, the Code requires that

> An entity in possession, custody, or control,
> during the case, of property that the trustee may
> use, sell, or lease under section 363 of this title, or

MEMORANDUM OF DECISION – 4

> that the debtor may exempt under section 522 of
> this title, shall deliver to the trustee, and account
> for such property or the value of such property,
> unless such property is of inconsequential value
> or benefit to the estate.

§ 542(a).  The Code's definitional provisions make clear that a debtor is an

"entity" for purposes of this provision.  *See* 11 U.S.C. §§ 101(15), (41), and

(13).  And Congress' use of the term "shall" in § 542(a) means that a

debtor's duty to turn over estate property to the trustee, or to account for

the value of that property, is mandatory.  *Id.*; *see also*, *In re Ellis*, 11.1 IBCR

5, 7 (Bankr. D. Idaho 2011) (citing *State of Cal. Emp't Dev. Dep't v. Taxel (In

re Del Mission Ltd.)*, 98 F.3d 1147, 1151 (9th Cir. 1996)).

Debtors do not dispute that the funds in their checking account on

the petition day became part of their bankruptcy estate.  Dkt. No. 26-1, pg.

4. They have also not argued that the $8,360 in question is not of

inconsequential value or benefit to the estate.  Instead, Debtors ask the

Court to deviate from a strict application of § 542(a) under the peculiar

circumstances presented in this case.  Specifically, they point out that they

did not "spend" the money in their account after filing for bankruptcy, as

MEMORANDUM OF DECISION – 5

is sometimes the case.  Rather, Debtors wrote a prepetition check to pay

what would have undoubtedly been an allowed priority claim in their

bankruptcy case.  *See* § 507(a)(8)(A)(I).  Indeed, Debtors' check was mailed

to the IRS a full week prior to the petition day, and in fact was deposited

into the IRS's bank account prior to the bankruptcy filing.  And had

Debtors not paid the tax debt, the funds in their bank account would have

been used to pay it.  Thus, Debtors insist, the creditors are not prejudiced

by what occurred.  In this sense, then, Debtors contend that they have

effectively "accounted for" the funds, and the Court should look beyond

the plain language of § 542(a) and not require them to pay over the

amounts in their bank account to Trustee under these peculiar facts.

In response, Trustee notes that Rule 4002(b)(2) requires Debtors to

bring to the § 341(a) meeting of creditors "statements for each of the

debtor's depository and investment accounts, including checking [and]

savings . . . accounts . . . for the time period that includes the date of the

filing of the petition[.]"  Given this rule, he argues Debtors should have

been aware that Trustee would examine their bank account balances on

MEMORANDUM OF DECISION – 6

petition day, and that, if they wanted to avoid this predicament, they

should have ensured that the check to the IRS had cleared prior to the date

they decided to file their petition.

In addition, Trustee makes an interesting policy argument: if the

Court does not order turnover of Debtors' bank account balance on

petition day under these facts, the Court will effectively recognize an

essentially unlimited "exemption" for funds in debtors' bank accounts.

According to Trustee, if debtors are free to spend the money in the bank

accounts as they choose, and assuming the trustee desires to recoup that

money for the estate, he must then pursue an avoidance action under

§ 549(a) against the check recipient to avoid the transaction.  Insulating a

debtor and requiring trustees to pursue the recipient of the transfer

would, according to Trustee, unreasonably deplete estate funds, or

perhaps, because such postpetition transfers are frequently for smaller

amounts to a number of payees, discourage trustees from seeking recovery

of the transferred money at all.  Trustee suggests that obtaining turnover

from a debtor is a simpler, more cost-effective way of accomplishing what

MEMORANDUM OF DECISION – 7

the Code provides, *i.e.*, that the trustee obtain possession of estate property

for the benefit of a debtor's creditors.

The courts have wrestled with this issue.  Some focus upon whether

a debtor is really in possession of funds in a bank account on petition day,

which thereby triggers the § 542(a) debtor's duty to turn over the funds, or

to account for the value of the account, to the trustee.  *See, e.g., In re Pyatt*,

486 F.3d 423 (8th Cir. 2007); *In re Henson*, 449 B.R. 109 (D. Nev. 2011).  *In re*

*Pyatt* holds that, under similar facts, a debtor can not be compelled to later

turn over the funds in his bank account on petition day to the trustee

because they were no longer in debtor's possession or control, as most of

the funds were used to honor prepetition checks that cleared the account

postpetition.  486 F.3d at 429.

However, the majority of cases to address the issue, including a

recent one from the Ninth Circuit Bankruptcy Appellate Panel, employ a

plain language analysis of § 542(a), and require only that the debtor have

possession of the property in question "during the case."   In *Newman v.*

*Schwartzer (In re Newman)*, 487 B.R. 193 (9th Cir. BAP 2013), the Panel

MEMORANDUM OF DECISION – 8

considered a trustee's turnover motion targeting an income tax refund

received by the debtor after filing but during the pendency of the chapter 7

case.  The debtor had failed to disclose either the right to receive the

refund, or its subsequent receipt, until the trustee specifically asked for a

copy of the debtor's tax return.  When the trustee demanded turnover of

the refund, debtor objected on several grounds, including that he had

already spent the funds by the time the trustee made his demand.  The

debtor argued that because at the time of the demand he was no longer in

"possession, custody, or control" of the funds, § 542(a) did not require him

to turn them over, and cited to *In re Pyatt, supra*, for support.

The Panel rejected the debtor's argument.  Noting that *In re Pyatt*

represents the minority view, the *In re Newman* panel held that "even

though debtor no longer possessed the funds, he was not relieved of his

statutory obligation 'to deliver to the trustee and account for such

property' or its value."  *In re Newman*, 487 B.R. at 200 (quoting *Rynda v.*

*Thompson (In re Rynda)*, 2012 WL 603657 at *2 (9th Cir. BAP Jan. 30, 2012)).

In so concluding, the *In re Newman* panel cited with approval a decision

MEMORANDUM OF DECISION – 9

from the Tenth Circuit Bankruptcy Appellate Panel, *Jubber v. Ruiz (In re*

*Ruiz)*, 455 B.R. 745 (10th Cir. BAP 2011).  *In re Newman*, 487 B.R. at 199-200.

The facts of *In re Ruiz* are much like those presented in this case.  There, the

bankruptcy court had held that the balance in the debtor's checking

account on petition day merely constituted a debt owed by the bank to the

debtor, and it was the right to collect on this debt, rather than the funds

themselves, that constituted property of the bankruptcy estate.  *In re Ruiz*,

440 B.R. 197, 201 (Bankr. D. Utah 2010).  Reversing, the appellate panel

disagreed, holding that the funds in the checking account, rather than

merely the promise to pay over those funds, are what constituted property

of the bankruptcy estate.  The panel acknowledged that the debtor had

neither possession nor custody of the funds on bankruptcy day, but it

concluded that the debtor had control of the account:

> At any time prior to the filing of the petition, and
> up to the time the funds were withdrawn by the
> third parties to whom Debtors had written
> prepetition checks, Debtors had the ability to
> withdraw all funds in their account, to close the
> account, to stop payment on any outstanding
> checks, and to transfer the funds from the account

MEMORANDUM OF DECISION – 10

> to another account.  There can really be no
> question that these Debtors had nearly total
> control over these funds on the date they filed the
> petition . . . .

*In re Ruiz*, 455 B.R. at 750.  Since the debtor had control of the funds during

the pendency of the bankruptcy case, the Panel held that the trustee was

entitled to an order compelling the debtor to turn over the funds.  *Id.* at

755.

The Court is inclined to adopt the reasoning of *In re Newman* and *In*

*re Ruiz.*  As in those cases, while there is no evidence that Debtors engaged

in any inappropriate conduct, and even though their prepetition payment

served to satisfy what would be priority claim in their bankruptcy case

had the debt not been paid, the Court finds no basis exists to depart from

the plain meaning of § 542(a).  Even if the Court were to assume that

Debtors did not have possession or custody of the funds in their bank

account on bankruptcy day, there is nothing in the record to show that

Debtors did not have *control* of the funds at the time they filed the

bankruptcy case.  The funds in their account became property of the

MEMORANDUM OF DECISION – 11

bankruptcy estate when Debtors filed their petition.

Debtors have a duty under § 521(a)(4) to "surrender to the trustee all property of the estate . . . ." Trustee demanded that the funds be turned over to him, or that Debtors account to him for the value of those funds, which were disbursed post-bankruptcy. They declined to do so. Under these facts, $8,360 is not inconsequential, and the mandatory provisions of § 542(a) require that Debtors comply with Trustee's turnover demand.

*Conclusion*

Debtors may consider this a harsh result. However, Congress has drawn a bright-line which Debtors failed to toe. Debtors could have avoided this outcome both in their decision as to when to pay the tax debt, as well as when to file their petition.

Pursuant to § 542(a), Debtors must account to Trustee for the $8,360 which was on deposit in their bank account on the date their bankruptcy petition was filed. Trustee's motion will be granted. Trustee and counsel for Debtor should approve and submit a proposed order for entry by the Court.

MEMORANDUM OF DECISION – 12

Dated:  April 8, 2013

_____

Honorable Jim D. Pappas
United States Bankruptcy Judge